## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNIVERSITY OF NORTH CAROLINA HOSPITALS AT CHAPEL HILL<br>101 Manning Drive<br>Chapel Hill, NC  27514-4220<br><br>THE UNIVERSITY OF CHICAGO MEDICAL CENTER<br>5841 S Maryland Ave<br>Chicago, IL  60637-1443<br><br>BRIDGEPORT HOSPITAL<br>267 Grant Street<br>Bridgeport, CT 06610<br><br>GREENWICH HOSPITAL<br>5 Perryridge Road<br>Greenwich, CT 06830<br><br>YALE NEW HAVEN HOSPITAL<br>20 York Street<br>New Haven, CT 06510<br><br>Plaintiffs,<br>v.<br><br>XAVIER BECERRA<br>Secretary of the United States Department of Health and Human Services<br>200 Independence Avenue, S.W.<br>Washington, DC 2020,<br><br>Defendant. | Case No.: |

## **COMPLAINT**

Plaintiffs (the "Hospitals"), by and through their undersigned counsel, submit this

Complaint for relief against defendant Xavier Becerra, in his official capacity as Secretary of the

Department of Health and Human Services, and allege as follows:

## PRELIMINARY STATEMENT

1.      The Hospitals all provide inpatient services to Medicare beneficiaries, in the course of which they also provide and incur the expense of training medical residents and fellows.  The Secretary reimburses hospitals for the direct costs of providing graduate medical education ("DGME") using a formula that depends in part on the number of a hospital's "full time equivalent" residents in a given year, or its "FTE count."  In 2021, this Court held that the method the Secretary used to determine hospital FTE counts for DGME was contrary to the Medicare statute.  *Milton S. Hershey Medical Center v. Becerra*, 2021 WL 1966572, at \*5 (D.D.C. May 17, 2021) ("*Hershey*").  In a final notice and comment rule setting hospital payment rates, the Secretary acquiesced in the *Hershey* decision, conceding that since at least 2001 he had used a method to determine hospital FTE counts that "was not consistent with statutory requirements …" and that his "existing rule, which does not comply with the statute, should be modified retroactively such that … computation rules are consistent with the statute …."  MEDICARE PROGRAM; HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEMS FOR ACUTE CARE HOSPITALS AND THE LONG-TERM CARE HOSPITAL PROSPECTIVE PAYMENT SYSTEM AND POLICY CHANGES AND FISCAL YEAR 2023 RATES, 87 Fed. Reg. 48,780, 49,069 (Aug. 10, 2022) ("FY 2023 Rule").  The Secretary modified his regulation to make his method to determine FTE counts statutorily compliant and did so retroactively to 2001.  *Id.*

2.      However, despite making his statutorily compliant regulation retroactive to 2001, the Secretary limited his correction of invalid DGME payments to hospitals' "open cost years."  *Id.*  For other hospitals, including the Hospitals for their cost years at issue in this action, the Secretary determined not to correct his admittedly unlawful DGME payments.

3.      Having replaced his invalid method with the statutorily compliant regulation and method, back to 2001, the Secretary must apply the statutorily compliant method to the Hospitals'

invalid past payment determinations for the years he states are closed.  Therefore, the Hospitals filed jurisdictionally proper appeals with the Secretary's Provider Reimbursement Review Board ("Board") challenging the Secretary's final determination in the FY 2023 Rule not to apply the retroactive regulation to their closed cost reporting years at issue in this action.  The Board, however, dismissed the appeals stating that the FY 2023 Rule was not a final determination for purposes of its jurisdiction because the decision not to apply the corrected payment rule retroactively allegedly "has no reimbursement impact on" closed cost reports.  The Board also stated that the Secretary's decision was consistent with his reopening regulation.

4.     Those regulations unambiguously command the Secretary to "reopen and revise any" cost report "if CMS provides explicit notice to the contractor that the contractor determination or the contractor hearing decision is inconsistent with the applicable law, regulations, CMS ruling, or other interpretive rules … in effect, and as CMS understood those legal provisions, at the time the determination or decision was rendered by the contractor …."  42 C.F.R. § 405.1885(c)(1). Although the Secretary asserted in the FY 2023 Rule that this reopening regulation does not apply, the Secretary irrationally ignored the fact that he did not merely announce that the prior payment determinations "were inconsistent with … law" (because they violated the statute), but he also retroactively replaced the invalid payment rule with a corrected payment rule from 2001 forward.

5.     Moreover, the Secretary's decision to selectively pay only some hospitals properly, based on the happenstance that their cost reporting period in question was still open, was arbitrary, capricious, and otherwise contrary to law.  In fact, the Secretary reopens settled payment determinations to recoup billions of dollars in alleged overpayments from hospitals while, here, refusing to correct the conceded underpayments from his now-renounced statutorily invalid DGME calculation method.

6. The Secretary must also reopen and revise the Hospitals DGME payments for their cost reporting periods in which the retroactive corrected regulation has replaced the unlawful prior method.

7. Based on the foregoing, and as elaborated on in more detail below, the Hospitals seek an order from this Court: (a) holding unlawful and setting aside the Secretary's final decision not to reopen and correct the Hospitals' DGME reimbursement for the years improperly determined under the Secretary's unlawful prior method and retroactively corrected in the FY 2023 Rule; and (b) directing the Secretary to make prompt payment of any additional amounts due to the Hospitals with interest calculated in accordance with 42 U.S.C. §§ 1395oo(f)(2) and/or 1395g(d).

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final agency decision regarding Medicare reimbursement) and 28 U.S.C. § 1361 (mandamus).

9. Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f) and 28 U.S.C. § 1391(e).

## PARTIES

10. University of North Carolina Hospitals at Chapel Hill, Medicare Provider Number 34-0061, for hospital fiscal years 2001, 2002, 2003, 2004, 2008, 2009, 2010, 2011, 2012, and 2013.

11. The University of Chicago Medical Center, Medicare Provider Number 14-0088, for hospital fiscal years 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2010, and 2011.

12. Bridgeport Hospital, Medicare Provider Number 07-0010, for hospital fiscal years

2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, and 2015.

13.     Greenwich Hospital, Medicare Provider Number 07-0018, for hospital fiscal years 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017, 2018, and 2019.

14.     Yale New Haven Hospital, Medicare Provider Number 07-0022, for hospital fiscal years 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, and 2013.

15.     Defendant Xavier Becerra is sued in his official capacity as the Secretary of the Department of Health and Human Services ("HHS"). HHS is responsible for administering the Medicare program, which it does through the Centers for Medicare & Medicaid Services ("CMS").

## BACKGROUND

## I.     The Medicare Program and the Inpatient Prospective Payment System

16.     Medicare is a federal program that provides health insurance to the elderly, and disabled, and those afflicted with end-stage renal disease.  42 U.S.C. § 1395c.  Part A of Medicare includes provides coverage and payment for inpatient hospital treatment.  *See id.* § 1395d(a). Only Part A is at issue in this action.

17.     The Medicare program is administered by the Secretary HHS through CMS, an agency within HHS.  42 U.S.C. § 1395kk(a); *Health Care Financing Administration Reorganization Order*, 42 Fed. Reg. 13,262 (Mar. 9, 1977).  The Medicare statute grants HHS rulemaking authority to promulgate regulations to administer the Medicare program, specifying that the rulemaking process must include a public comment period of at least 60 days.  42 U.S.C. § 1395hh(a)(1), (b)(1). The statute also requires that any "rule, requirement, or other statement of policy" that "establishes or changes a substantive legal standard governing . . . the payment for

services" must go through this rulemaking process. *Id.* § 1395hh(a)(2). The Supreme Court has explained that this broad rulemaking requirement (a) does not apply only to the establishment or changing of rules with the force and effect of law, but could also apply to guidance that governs "payment for services," and (b) is in addition to the requirements of the Administrative Procedure Act. *See Azar v. Allina Health Services*, 139 S. Ct. 1804, 1811 (2019).

18.     Medicare beneficiaries receive inpatient hospital services from healthcare providers, such as the Hospitals, that have entered into provider agreements with HHS. These providers are reimbursed for treating Medicare beneficiaries under the Inpatient Prospective Payment System ("IPPS"). This is a system that fixes standard, nationwide reimbursement rates for categories of treatment, subject to various adjustments. *Shands Jacksonville Med. Ctr., Inc. v. Azar*, 959 F.3d 1113, 1115 (D.C. Cir. 2020); *see* 42 U.S.C. § 1395ww(d)(1)-(5).

## II.    Reimbursement for Direct Graduate Medical Education and the Calculation of Hospital FTE Counts

19.     The Medicare statute reimburses hospitals for the direct costs of graduate medical education, or "DGME." 42 U.S.C. § 1395ww(h). The DGME payment is calculated by multiplying a hospital's "patient load" times its "approved amount." *Id.* § 1395ww(h)(3)(A). The "patient load" is "the fraction of the total number of inpatient-bed-days . . . during the period which are attributable to patients with respect to whom payment may be made under [Medicare] part A." *Id.* § 1395ww(h)(3)(C). The "approved amount" is the product of a hospital's base-period per-resident amount ("PRA") and its weighted average number of FTE residents. *Id.* § 1395ww(h)(3)(B); 42 C.F.R. § 413.76(a). The weighted average number of FTEs is calculated using the average of "the actual [FTE] resident counts for the cost reporting period and the preceding two cost reporting periods." 42 U.S.C. § 1395ww(h)(4)(G). The following is the basic formula for calculating a hospital's DGME payment:

**PRA x (3-year FTE count average) x (Medicare Patient Load) = DGME Payment**

20.     Residents are weighted for purposes of the FTE count based on whether they are within or whether they are beyond their "initial residency period" or "IRP."  A resident's IRP is defined as the period necessary for board eligibility in the resident's training program, not to exceed five years.  *Id.* § 1395ww(h)(5)(F).  Residents who are beyond the IRP often participate in post-residency fellowship programs.  The statute requires that, when determining the FTE count, residents beyond their IRP are to be weighted at 0.5, *i.e.*, only half of their eligible time is counted.  *Id.* § 1395ww(h)(4)(C).  In contrast, the statute requires that residents within their IRPs must be weighted at 1.0, so that all of their eligible time is counted.  *Id.*

21.     In addition, for cost reporting periods beginning on or after October 1, 1997, Congress established a cap on the number of *unweighted* DGME FTEs that a hospital may include in its FTE count.  The cap is set at a hospital's number of unweighted FTEs during its most recent fiscal year that ended in 1996.  *Id.* § 1395ww(h)(4)(F).  Thus, a hospital's three-year FTE count average in the DGME formula is capped at the number of unweighted FTEs that the hospital trained in its 1996 cost-reporting period.  Further, the statute requires the FTE cap to be determined "before application of weighting factors" based on whether residents are in or beyond the IRP.  *Id.* § 1395ww(h)(4)(F)(i).

22.     In 1997, the Secretary promulgated a regulation to implement the 1996 cap that calculates a *weighted* FTE cap to be used in the payment calculation:

> If the hospital's number of FTE residents in a cost reporting period beginning on or after October 1, 1997, exceeds the limit described in this paragraph (g) [i.e., the 1996 unweighted cap], the hospital's weighted FTE count (before application of the limit) will be reduced in the same proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996.

42 C.F.R. § 413.86(g)(4) (1997).

23.     On August 1, 2001, the Secretary amended the regulation to determine separate weighted FTE caps for primary care residents and non-primary care residents, effective for cost reporting periods beginning on or after October 1, 2001.  42 C.F.R. § 413.86(g)(4)(iii) (2001); MEDICARE PROGRAM; CHANGES TO THE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEMS AND RATES AND COSTS OF GRADUATE MEDICAL EDUCATION: FISCAL YEAR 2002 RATES, 66 Fed. Reg. 39,828, 39,893-96 (Aug. 1, 2001) ("FY 2002 IPPS Rule").  The Secretary did not change the formula for determining the weighted FTE cap.  Rather, the Secretary used the same methodology as in the 1997 rule to calculate a primary care weighted FTE cap and a non-primary care weighted FTE cap, which were then added together.  42 C.F.R. § 413.86(g)(4)(iii) (2001); FY 2002 IPPS Rule, 66 Fed. Reg. at 39,894.

24.     In 2004, the Secretary redesignated the regulation from 42 C.F.R. § 413.86(g)(4)(iii) to 42 C.F.R. § 413.79(c)(2)(iii).  MEDICARE PROGRAM; CHANGES TO THE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEMS AND FISCAL YEAR 2005 RATES, 69 Fed. Reg. 48,916, 49,112, 49,258-64 (Aug. 11, 2004).

25.     The Secretary's regulation calculated the ratio of a hospital's unweighted FTE cap to the hospital's current-year unweighted FTE count.  42 C.F.R. § 413.79(c)(2)(ii)-(iii) (the "proportion that the number of FTE residents for that cost reporting period exceeds the number of FTE residents for the most recent cost reporting period ending on or before December 31, 1996"); *id.* § 413.86(g)(4)(iii) (2002-2003).  This ratio represented the percentage by which the hospital's 1996 cap was above or below the current-year unweighted FTE count.  The ratio was then multiplied by the current-year weighted FTE count (both residents within and beyond their IRP) to reduce the weighted count.  *Id.*  The resulting number was the weighted FTE cap.  The Secretary's methodology can be expressed using the following equation:

**(1996 FTE Cap)/(Unweighted FTEs) x Weighted FTEs = Weighted FTE Cap**

The Secretary described the result of this formula as "the hospital's reduced cap." FY 2002 IPPS

Rule, 66 Fed. Reg. at 39,894.

26.     The regulation calculated a hospital's DGME payment based on its weighted

FTEs, which could not exceed its weighted cap. 42 C.F.R. §§ 413.76(a), 413.79(c)(2)(iii) (2017).

As this Court later held and the Secretary later admitted, this formula violated the Medicare

statute.

### III.     *Milton S. Hershey Medical Center v. Becerra* Held that the Secretary's Method to Determine FTE Counts Violated the Statute

27.     In *Milton S. Hershey Medical Center v. Becerra*, several hospitals challenged the

Secretary's DGME methodology regulation under 42 C.F.R. § 413.79(c)(2)(iii). *Hershey*, No.

1:19-cv-02680-TJK (consol.), 2021 WL 1966572 (D.D.C. May 17, 2021), *appeal dismissed,* No.

21-5169, 2021 WL 4057675 (D.C. Cir. Aug. 23, 2021). This Court held "that [the Secretary's]

application of the regulation to compute Plaintiffs' full-time equivalent residents was contrary to

law because the regulation effectively changed the weighting factors statutorily assigned to

residents and fellows." *Hershey*, 2021 WL 1966572, at *1. This Court explained as follows:

> Simply put, the text of the statute does not give the Secretary the latitude to
> decide, under these conditions, to change the weights that Congress assigned to
> residents and fellows when he calculates the FTE residents for each hospital.
> Rather, the statute is clear: the Secretary's rules "shall provide, in calculating the
> number of [FTE] residents in an approved residency program," that residents be
> weighted at 1.0 and fellows at 0.5. § 1395ww(h)(4)(C). When Congress uses the
> word "shall," its language is mandatory or imperative, not merely precatory." *See*
> *United States v. Monzel*, 641 F.3d 528, 531 (D.C. Cir. 2011). Thus, the Court's
> inquiry ends at *Chevron* step one, and it holds that the regulation is unlawful as
> applied to [the plaintiff hospitals].

*Hershey*, 2021 WL 1966572, at *5.

### IV.     In Response to *Hershey*, the Secretary Retroactively Corrected His Regulation to Conform to the Statute But Purported to Limit the Retroactive Effect

28.     On August 10, 2022, the Secretary published the FY 2023 Rule, which retroactively changed the method for calculating FTE counts for DGME payments, acquiescing in this Court's ruling in *Hershey*.  FY 2023 Rule, 87 Fed. Reg. at 49,066–72.  The Secretary conceded that his then "existing formula for computing the number of FTEs was inconsistent with the statutory requirements," and finalized a rule that applies a new formula for determining FTE counts consistent with the *Hershey* decision.  *Id.* at 49,067, 49,066–72.

29.     The Secretary stated, "[a]fter reviewing the statutory language regarding the direct [graduate medical education] FTE cap and the court's opinion [in *Hershey*]," the agency decided to "implement a modified policy to be applied prospectively for all teaching hospitals, as well as retroactively to the providers and cost years in Hershey and certain other providers . . . ." *Id.* at 48,784.

30.     The modified policy determines a hospital's allowable weighted FTEs by comparing the FTE cap to the current-year unweighted and weighted FTEs.  If the weighted and unweighted FTEs both exceed the FTE cap, the allowable weighted FTEs will equal the FTE cap.  FY 2023 Rule, 87 Fed. Reg. at 49,072, 49,406 (revising 42 C.F.R. § 413.79(c)(2)(iii) (2022)).  If the weighted FTEs do not exceed the FTE cap, the allowable weighted FTEs will equal the actual weighted FTEs.  *Id.*  The Hospitals do not challenge this revised calculation.

31.     In finding "good cause" to promulgate the new rule retroactively to cost reporting periods starting on or after October 1, 2001, 42 C.F.R. § 413.79(c)(2)(iii) (2022), the Secretary stated:

> [T]he statute at issue states that "[t]he Secretary shall establish rules *consistent with this paragraph* for the computation of the number of full-time equivalent residents in an approved medical residency training program."  Section 1886(h)(4)(A) of the Act (emphasis added). And the *Hershey* court did say that the rules at issue were not consistent with the statute. Following our review of the *Hershey* court's reasoning and the statutory requirements, we decided that our

method for computing FTEs was not consistent with statutory requirements. We therefore conclude that our existing rule, which does not comply with the statute, should be modified retroactively such that our FTE computation rules are consistent with the statute and payments, including payments for open cost years in past, are calculated pursuant to regulation.

FY 2023 Rule, 87 Fed. Reg. at 49,069.

32.     The Secretary further stated that retroactive rulemaking was necessary to ensure that past payments were determined consistent with the statute:

And we acknowledge—and we do not believe that commenters disagree—that it is necessary to recalculate past payments in light of the Hershey decision. The public interest will be served by having past payments calculated in the same way as future payments, and given our view that it is necessary to engage in notice-and-comment rulemaking to implement the Hershey decision, we believe it is sensible and efficient to calculate past payments based on a formula promulgated with the benefit of notice-and-comment rulemaking. We do not mean to imply that the public interest requires consistency between past payments and future payments in all conceivable situations. However, where—as here— payment was set by a regulation that a court held inconsistent with substantive statutory requirements and the agency engages in new notice-and-comment rulemaking to implement that judicial ruling, there is a public benefit in having past payments calculated via the same method as future payments. This is particularly true where the statute at issue requires that payments be calculated pursuant to a rule. We therefore believe that this is a case where the public interest in having a rule applicable to all payments, both past and future, justifies retroactive rulemaking. It would be contrary to the public interest for plaintiffs in *Hershey* and other judicial challenges to have their payments calculated by a different methodology (whether more or less generous than the methodology established by regulation) than other providers that are otherwise similarly situated. Retroactive rulemaking in this situation, benefits the public interest by achieving parity in payment among similarly situated hospitals.

*Id.* at 49,070.

33.     Several commenters urged the Secretary to reopen closed cost reports to apply the new, lawful rule.  These commenters stated that 42 C.F.R. § 405.1885(c) should not prevent reopening to correct the improper payments.  Despite conceding that past DGME payments were unlawfully calculated and that recalculating past payments is in the public interest, the Secretary refused to reopen cost reports and apply the new regulation to DGME payments that the

Secretary admits were unlawfully determined:

> We disagree that 405.1885(c)(2) does not apply to retroactive rules. The text of
> the regulation does not support that proposed carve-out. The rule we proposed—
> and finalize here—is a "change of legal interpretation or policy by CMS in a
> regulation . . . made in response to judicial precedent," and thus it is "not a basis
> for reopening a CMS or contractor determination." Some commenters urged us to
> apply 42 CFR 405.1885(c)(1) to direct contractors to reopen cost reports, but we
> note that paragraph (c)(1) allows CMS to do so ("CMS may direct a contractor ...
> to reopen and revise") subject to the prohibited reopening's in paragraph (c)(2).
> We disagree that this rule will have no "real retroactive effect," as a number of
> hospitals will receive increased reimbursement for past cost reporting years.

*Id.*

34.     The Secretary asserted, "Consistent with § 405.1885(c)(2), any final rule

retroactively adopting the proposed new policy would not be the basis for reopening final settled

NPRs."  *Id.* at 49,067.  The Secretary further claimed, "The rule we proposed—and finalize

here— is a "change of legal interpretation or policy by CMS in a regulation . . . made in response

to judicial precedent," and thus it is "not a basis for reopening a CMS or contractor

determination." *Id*. at 49,070.

**V.     The Medicare Appeals Process**

35.     If a hospital is dissatisfied with a "final determination" as to the amount of its

Medicare IPPS payments, the provider may appeal to the Board if it meets the requirements set

forth in 42 U.S.C. § 1395oo(a), including that the "amount in controversy is $10,000 or more,"

and "such provider files a request for a hearing within . . . 180 days after notice of the Secretary's

final determination."  42 U.S.C. § 1395oo(a)(1)(A)(ii), (2), (3).  A group of hospitals may bring

such an appeal if the matter in controversy involves a common question of fact or interpretation

of law or regulations and the amount in controversy is, in the aggregate, $50,000 or more.  42

U.S.C. § 1395oo(b).

36.     The Secretary's final determinations regarding IPPS payment rules made in his

annual IPPS rulemakings constitute a "final determination of the Secretary" that may be appealed to the Board.  42 U.S.C. § 1395oo(a)(1)(A)(ii); *see also Washington Hospital Center v. Bowen*, 795 F.2d 139, 146 (D.C. Cir. 1986).

37.     The Board is bound by, and hence lacks the authority to adjudicate the validity of, the Medicare statute, regulations under the Medicare statute, and CMS Rulings issued under the authority of the CMS Administrator.  *See* 42 C.F.R. § 405.1867.

38.     Because the Board lacks authority to adjudicate the validity of the Medicare statute or regulations promulgated under it, where a hospital is entitled to a Board hearing, the hospital may request that the Board determine that it lacks authority to decide a question of law or regulations relevant to the appeal.  If the Board makes this determination, it must certify the case for expedited judicial review ("EJR").  42 U.S.C. § 1395oo(f)(l); 42 C.F.R. § 405.1842.  In the event that the Board grants EJR, the hospital may file suit in federal district court seeking judicial review within 60 days.  *See* 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1842(g)(2).

39.     If the Board determines that it lacks jurisdiction over an appeal, it must dismiss the appeal.  *Id.* § 405.1840(c). The CMS Administrator may review a Board dismissal. *Id.* § 405.1875(a)(2).  A Board dismissal that is not reviewed by the CMS Administrator constitutes a final agency decision. *Id.* §§ 405.1875(a)(2)(ii), 405.1877(a)(3).

40.     Upon receiving the Board's final decision, hospitals have a right to seek judicial review of that decision by filing suit within 60 days in the United States District Court for the judicial district in which the hospital is located, or in the United States District Court for the District of Columbia.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877(a).

41.     Under 42 U.S.C. § 1395oo(f)(2), interest on the amount in controversy is to be awarded by the reviewing court in favor of a hospital that prevails in an action brought under 42

U.S.C. § 1395oo(f).  In addition, under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within thirty days of a "final determination."

42.     Judicial relief is also available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right.  *In re Medicare Reimbursement Litig.*, 414 F.3d 7 (D.C. Cir. 2005); *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

**VI.     The Administrative Procedure Act ("APA")**

43.     Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review after the Board dismisses an appeal for lack of jurisdiction "shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA.  Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Furthermore, a "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).

44.     Additionally, a "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law."  5 U.S.C. § 706(2)(D).  The APA requires that the agency provide notice of proposed rulemaking, afford interested parties an opportunity to comment on the proposed rulemaking, and consider the relevant matters presented.  *See* 5 U.S.C. § 553.

45.     The Secretary's final determination in the FY 2023 Rule and his decision, as set forth in the Board's dismissal letter, is unlawful and should be set aside for at least the reasons

set forth below.

## VII.   Reopening of Medicare Cost Report Determinations

46.     Congress permits the Secretary to reopen and revise Medicare claims "under

guidelines established by the Secretary in regulations."  42 U.S.C. § 1395ff(b)(1)(G).

47.     Before 2002, a Medicare regulation required MACs to reopen and revise cost

reports under the following circumstances:

> A determination or a hearing decision rendered by the intermediary *shall be reopened and revised* by the intermediary *if*, within the aforementioned 3-year period, the *Centers for Medicare & Medicaid Services notifies the intermediary* that such determination or decision is *inconsistent with the applicable law, regulations, or general instructions* issued by the Centers for Medicare & Medicaid Services in accordance with the Secretary's agreement with the intermediary.

42 C.F.R. § 405.1885(b) (2001) (emphasis added).

48.     In *Monmouth*, the United States Court of Appeals for the D.C. Circuit held that 42

C.F.R. § 405.1885(b) required the Secretary to reopen cost reports to correct certain prior

payment determinations that the Secretary conceded were erroneous.  *Monmouth*, 257 F.3d at

814-15.  *Monmouth* involved CMS's Ruling 97-2, which CMS issued without notice and

comment to revise a Medicare payment rule after four federal courts of appeal had invalidated

the rule.  *Monmouth*, 257 F.3d at 810.  CMS stated that, despite believing "that its longstanding

interpretation of the statutory language was a permissible reading of the statutory language, . . .

this interpretation is contrary to the applicable law in four judicial circuits." CMS, *HCFA Ruling

97-2* (Feb. 1997), *available at*

https://www.cms.gov/Regulations-and-Guidance/Guidance/Rulings/CMS-Rulings-

Items/CMS026540.  However, the revised policy would be implemented "on a prospective basis"

only, and CMS stated it would "not reopen settled cost reports based on this issue."  *Id.*

49.     Several hospitals requested reopening, which was denied, and then sought a writ

of mandamus compelling reopening.  *Id.*  Because CMS had given "notice of the [prior]
interpretation's inconsistency with applicable law," the D.C. Circuit held that "§ 405.1885(b)
imposed a clear duty on intermediaries to reopen . . . [the] payment determinations for hospitals,"
*id.* at 814, and ordered CMS to reopen the plaintiffs' payment determinations.

50.     In a second decision involving Ruling 97-2, the D.C. Circuit ordered CMS to
reopen the payment determinations for additional hospitals, even though they had not sought
reopening.  *In re Medicare Reimbursement Litig.*, 414 F.3d 11.  These hospitals were also
entitled to mandamus relief because Ruling 97-2 made a request for reopening futile, and
"section 405.1885(b) does not require hospitals to file anything at all to obtain relief."  *Id.*

51.     After *Monmouth*, the Secretary revised the cost report reopening regulation.
MEDICARE PROGRAM; CHANGES TO THE HOSPITAL INPATIENT PROSPECTIVE PAYMENT SYSTEMS
AND FISCAL YEAR 2003 RATES, 67 Fed. Reg. 49,982, 50,096-50,100, 50,110 (Aug. 1, 2002).  The
Secretary expressed disagreement with *Monmouth* and revised the regulation to require an
explicit directive to the MAC "to reopen in order to ensure consistency with a legal provision, as
we understood such provision when the determination or decision was issued."  *Id.* at 50,097.

52.     The current reopening regulation at 42 C.F.R. § 405.1885(c) states in relevant
part:

> **(1) CMS-directed reopenings.** CMS may direct a contractor or contractor
> hearing officer(s) to reopen and revise any matter, subject to the time limits
> specified in paragraph (b) of this section, and subject to the limitation expressed
> in paragraph (c)(2) of this section, by providing explicit direction to the contractor
> or contractor hearing officer(s) to reopen and revise.
>
> > **(i) Examples.** A contractor determination or contractor hearing decision must
> > be reopened and revised if CMS provides explicit notice to the contractor that
> > the contractor determination or the contractor hearing decision is inconsistent
> > with the applicable law, regulations, CMS ruling, or other interpretive rules,
> > general statements of policy, and rules of agency organization, procedure, or
> > practice established by CMS in effect, and as CMS understood those legal
> > provisions, at the time the determination or decision was rendered by the

contractor....

**(2) Prohibited reopenings.** A change of legal interpretation or policy by CMS in a regulation, CMS ruling, or other interpretive rules, general statements of policy, and rules of agency organization, procedure, or practice established by CMS, whether made in response to judicial precedent or otherwise, is not a basis for reopening a CMS or contractor determination, a contractor hearing decision, a CMS reviewing official decision, a Board decision, or an Administrator decision, under this section.

42 C.F.R. § 405.1885(c)(1), (c)(2).

53.     The reopening regulation also provides that CMS may order the reopening of a payment determination that is not procured by "fraud or similar fault" within three years of the determination.  *Id.* § 405.1885(b)(1).  Further, a payment determination "may be reopened and revised at any time if it is established that the determination or decision was procured by fraud or similar fault of any party to the determination or decision."  *Id.* § 405.1885(b)(3).

54.     The Medicare cost reporting regulations do not define "similar fault."  A related Medicare regulation governing the reopening of claims for health care items and services defines "similar fault" as follows: "*Similar fault* means to obtain, retain, convert, seek, or receive Medicare funds to which a person knows or should reasonably be expected to know that he or she or another for whose benefit Medicare funds are obtained, retained, converted, sought, or received is not legally entitled."  *Id.* § 405.902.

55.     Importantly, the Secretary promulgated his 2002 reopening regulation at a time when there was no statute permitting CMS to engage in retroactive IPPS rulemaking and the Supreme Court had recently ruled that retroactive rulemaking was presumed to be prohibited, in *Bowen v. Georgetown University Hospital,* 488 U.S. 204 (1988).  In *Bowen,* a "paradigmatic case of retroactivity" that involved a rule that altered the calculation method for Medicare provider reimbursement payments, the Supreme Court invalidated the rule's retroactive operation and articulated the now well-established principle that a statute will not be construed to

authorize retroactive rules unless Congress conveys that power "in express terms."

56.      Only <u>after</u> *Bowen* and shortly after the Secretary issued his 2002 reopening regulation, did Congress provide the Secretary with any express retroactive rulemaking authority with respect to IPPS payments.  In 2003, Congress amended the Medicare statute to authorize retroactivity expressly, but limited to two narrow circumstances: where retroactivity is necessary either to comply with a statute or to prevent something that would be contrary to the public interest.  Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108–173, § 903, 117 Stat. 2066 (2003); 42 U.S.C. § 1395hh(e)(1)(A).  Thus, the Secretary adopted the 2002 reopening regulation at a time when the agency only had authority to make rule changes or changes in interpretation that solely had *prospective* effect, and expected that rules intended to have only a prospective effect would not be applied retroactively through the vehicle of reopening.

## FACTS SPECIFIC TO THIS CASE

57.      The Hospitals are teaching hospitals that receive Medicare DGME payments.  The Hospitals all trained residents in their fiscal year ("FY") 1996 cost reporting periods.  Accordingly, the Secretary established DGME FTE caps for each of the Hospitals based on its FY 1996 resident FTE count.

58.      During all fiscal years at issue in this action, each of the Hospitals' FTE counts exceeded their 1996 FTE caps.  Each of the Hospitals' FTE counts included residents who were both within and beyond the IRP.  The Secretary used the method of the pre-2022 regulation at 42 C.F.R. § 413.79(c)(2)(iii) when applying the FTE weighting factors to the Hospitals' DGME FTE counts.  Accordingly, the Secretary did not comply with the statutory weighting factors, and the Hospitals' DGME payments were unlawfully too low and contrary to the Medicare statute.

42 U.S.C. § 1395ww(h)(4)(C); *Hershey*, 2021 WL 1966572, at *5.

59.     The Secretary issued final determinations that included DGME payment determinations for the Hospitals' cost reports prior to the FY 2023 Rule, using the statutorily unlawful method.  The Secretary issued some of these unlawful payment determinations within three years of the publication of the FY 2023 Rule and others more than three years before the FY 2023 Rule.

60.     The Hospitals filed jurisdictionally proper Board appeals challenging the Secretary's final determination in the FY 2023 Rule not to apply the retroactive FTE count regulation retroactively to their closed cost reporting years at issue in this action.  Each appeal was filed within 180 days of the publication of the FY 2023 Rule and has at least $50,000 in controversy.

61.     The Board assigned the following case numbers to the Hospitals' appeals: Hooper, Lundy & Bookman FFY 2023 Unlawful Correction of GME 'Fellows Penalty' in Final Rule Group, PRRB Case No. 23-0875G and Yale-New Haven FFY 2023 Unlawful Correction of GME 'Fellows Penalty' in Final Rule CIRP Group, PRRB Case No. 23-0906GC.

62.     In a decision dated May 14, 2024, the Board dismissed all appeals referenced in the preceding paragraph. (Exhibit A).  The Board found that it lacked jurisdiction over Plaintiffs' appeals.  Relying on *Your Home Visiting Nurse Services, Inc. v. Shalala,* 525 U.S. 449, 449-450 (1999), the Board stated that the FY 2023 Rule was "not a '*final determination*' within the context of 42 U.S.C. § 1395oo(a)(1) because the policy has no reimbursement impact on cost reports at issue *that have already been settled and closed.*"  Board Decision at 11 (footnotes omitted; emphasis in original).  Furthermore, the Board asserted that "CMS' decision not to reopen is consistent with its regulations governing reopening of final determinations." Board

Decision at 14.

63.     The Board's May 14, 2024 dismissal decision constitutes the Secretary's final

agency action in the Hospitals' Board appeals.

## CAUSES OF ACTION

### COUNT I:
### Violation of the Medicare Act and the APA

64.     The Hospitals hereby incorporate by reference all preceding paragraphs of this

Complaint.

65.     The APA requires a reviewing court to hold unlawful and set aside agency action,

findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of

statutory right." 5 U.S.C. § 706(2)(A), (C).

66.     The Board's jurisdictional dismissals are contrary to law because the Hospitals

timely appealed the Secretary's final determination in the FY 2023 Rule not to apply his

retroactively corrected DGME payment rule to correct the statutorily invalid DGME payment

determinations made with respect to the Hospitals, and the Hospitals' appeals met all

prerequisites for Board jurisdiction.  42 U.S.C. § 1395oo(a) (providing that a hospital may file a

Board appeal when it "is dissatisfied with a final determination of the Secretary as to the amount

of the [IPPS] payment," the appeal is filed "within … 180 days after notice of the Secretary's

final determination…."); *id.* § 1395oo(b) (permitting such appeals by a group of hospitals where

"the matters in controversy involve a common question of fact or interpretation of law or

regulations and the amount in controversy is, in the aggregate, $50,000 or more.").

67.     The Board's jurisdictional dismissals are also contrary to law because the Board

improperly characterized the Secretary's FY 2023 Rule as a MAC denial of reopening for which

there is no jurisdiction.  Not only is that explanation facially contrary to law, but the Secretary's reopening regulation itself was upheld on the basis of agency deference which the Supreme Court has now overturned.  *See Loper Bright Enterprises v. Raimondo*, ---S. Ct.---, 2024 WL 3208360 (June 28, 2024); *see Your Home*, 525 U.S. at 449-450 (deferring to Secretary's interpretation of a "final determination" under § 1395oo(a)(1)(A)(i) because the alternative offered by the plaintiff was both reasonable and precluded by an earlier Court decision applying *Chevron* deference, *Good Samaritan Hospital v. Shalala*, 508 U.S. 402 (1993)).

68.     As the Secretary conceded in the FY 2023 Rule, the methodology used to calculate the Hospitals' DGME payments made prior to the FY 2023 Rule was contrary to the clear requirements of 42 U.S.C. § 1395ww(h)(4)(C), (h)(4)(F).

69.     The Secretary's decision to promulgate a retroactive, statutorily compliant regulation, but to nullify the regulation's retroactive effect by refusing to reopen any final DGME payment determinations previously made under the statutorily non-compliant method, was arbitrary, capricious, and contrary to law, including without limitation because it violated 42 U.S.C. § 1395hh(e).

70.     The Secretary's decision to nullify the retroactive effect of his retroactively corrected DGME payment regulation with respect to past payment determinations, but to give it retroactive effect to pending payment determinations is arbitrary, capricious, and contrary to law.

71.     The Secretary's explanation for his decision to nullify the retroactive effect of his retroactively corrected DGME payment regulation with respect to past payment determinations, but to give it retroactive effect to pending payment determinations, is arbitrarily and capriciously vague and fails to satisfy his notice and comment obligations under the Medicare Act.  Among other things, the Secretary failed to provide a reasoned explanation for multiple internal

inconsistencies in the preamble to the FY 2023 Rule, including stating, on the one hand, that the retroactive statutorily corrected DGME regulation would not be grounds to reopen closed cost reports, *see* 88 Fed. Reg. at 49,070, while, on the other hand, stating that the Secretary would apply the corrected DGME regulation to past payment determinations "that are open or reopenable," *id.* at 49,456.

72.     The Secretary's decision not to direct MACs to reopen all of the statutorily noncompliant DGME payment determinations, or at least those determinations made within the three years prior to the FY 2023 Rule, was contrary to his reopening regulations.

73.     The Secretary's refusal to reopen payment determinations that result in additional payments due to hospitals under the Medicare Act is arbitrary, capricious, and inconsistent with the Secretary's practice of reopening past payment determinations under similar circumstances that result in recouping payments from hospitals.

74.     To the extent that the Secretary's reopening regulations do not require reopening of the Hospital's payment determinations based on the Secretary's FY 2023 Rule, those regulations are arbitrary, capricious, and otherwise contrary to law.

## COUNT II:
## Mandamus

75.     The Hospitals hereby incorporate by reference all preceding paragraphs of this Complaint.

76.     The statute at 28 U.S.C. § 1361 grants district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." A court "may grant mandamus relief 'if (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff.'" *In re Medicare Reimbursement Litig.*, 414

F.3d at 10 (quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)); *see also Monmouth*, 257 F.3d at 813 ("[T]o maintain an action under § 1361, a plaintiff must both exhaust administrative remedies and show a clear nondiscretionary duty.").

77.     The Hospitals have a clear right to recalculations of their DGME payments, which were determined using the methodology that the *Hershey* court found and the Secretary has conceded violated the statute.  *Hershey*, 2021 WL 1966572, at *1.  The Secretary's determination not to reopen and revise closed cost reports is contrary to the Medicare statute. The statute unambiguously requires the Secretary to weight residents who are within the IRP at 1.0 and residents who are beyond the IRP at 0.5 in all cost reporting periods beginning on or after October 1, 1997.  42 U.S.C. § 1395ww(h)(4)(C), (h)(4)(F); *Hershey*, 2021 WL 1966572 at *2.  The Hospitals' DGME payments were also determined contrary to the Secretary's regulation that is retroactive to cost reports beginning on or after October 1, 2001.  42 C.F.R. § 413.79(c)(2)(iii) (2022).

78.     *In re Medicare Reimbursement* held that "all hospitals undercompensated due to an erroneous interpretation of the law have a personal right to section 405.1885(b) reopening" because the provision "contains no prerequisite for relief beyond a notice of inconsistency" from the Secretary.  *In re Medicare Reimbursement Litig.*, 414 F.3d at 12.  The current reopening regulation also contains no prerequisites for reopening beyond an "explicit notice to the contractor that the contractor determination . . . is inconsistent with the applicable law, regulations, CMS ruling, or other interpretive rules . . . in effect, and as CMS understood those legal provisions, at the time the determination or decision was rendered by the contractor." 42 C.F.R. § 405.1885(c)(1)(i).

79.     *Hershey* invalidated the Secretary's previous DGME formula finding that the

Medicare statute "is clear" and "does not give the Secretary the latitude to decide . . . to change the weights that Congress assigned to residents and fellows when he calculates the FTE residents for each hospital." *Hershey*, 2021 WL 1966572, at *5.

80.     The Secretary conceded that the pre-2022 DGME formula is contrary to the Medicare statute.  FY 2023 Rule, 87 Fed. Reg. at 49,069.

81.     The Secretary's new DGME formula, 42 C.F.R. § 413.79(c)(2)(iii) (2022)— which the Secretary made retroactive to 2001—renders the MAC's payments contrary to law "at the time the determination or decision was rendered by the contractor."  42 C.F.R. § 405.1885(c)(1)(i).

82.     Thus, the Secretary's FY 2023 Rule stating that the pre-*Hershey* DGME payment formula is contrary to law at the time it was applied to the Hospitals cost reporting periods constitutes explicit notice requiring MACs to reopen closed cost reports.  *See* FY 2023 Rule, 87 Fed. Reg. at 49,066-72; *see also In re Medicare Reimbursement Litig.*, 414 F.3d 7; *Monmouth*, 257 F.3d 807.

83.     Because the Secretary does not possess interpretive authority or policy making discretion over the plain text of the Medicare statute, the new DGME rule does not constitute a "change of legal interpretation or policy" that might prohibit reopening under 42 C.F.R. § 405.1885(c)(1).

84.     Because the Secretary made the statutorily compliant version of 42 C.F.R. § 413.79(c)(2)(iii)retroactive to 2001, the statutorily compliant rule "was in effect at the time the determination or decision was rendered by the contractor" and the MACs' determinations are "inconsistent with the applicable law, regulations . . . as CMS understood those legal provisions at the time the determination[s]" or decisions were made.  42 C.F.R. § 405.1885(c)(1)(i).

85.     The Secretary has a clear, nondiscretionary duty to reopen and revise the
Hospitals' cost reports beginning on or after October 1, 2001. 42 C.F.R. § 405.1885(c)(1); *see
also In re Medicare Reimbursement Litig*., 414 F.3d 7 at 11 (CMS "[c]onceding that section
405.1855(b) creates a duty to reopen NPRs of all affected hospitals when [CMS] issues a notice
of inconsistency"); *Monmouth*, 257 F.3d at 814 (holding that a clear duty to reopen cost reports
existed after the "Secretary did in fact give notice of the [Agency] interpretation's inconsistency
with applicable law").

86.     The Secretary has a clear duty to reopen and revise the Hospitals' DGME
payment determinations made within three years of the date of the FY 2023 Rule.  42 C.F.R.
§ 405.1885(b)(1).

87.     In addition or in the alternative, the Secretary has a clear duty to reopen and revise
DGME payment determinations made at any time under the prior formula that violated the plain
language of the statute because those determinations were the result of "similar fault."  The
Secretary, as the officer of the Executive Branch charged by Congress with implementing the
Medicare statute, "knows or should reasonably be expected to know" Medicare statutory
requirements.  This includes the plain statutory requirement to weight residents still within the
IRP at 1.0 and residents beyond the IRP at 0.5.  42 U.S.C. § 1395ww(h)(4)(C).

88.     In the FY 2023 Rule, the Secretary conceded that his then "existing formula for
computing the number of FTEs was inconsistent with the statutory requirements" and
retroactively promulgated a statutorily compliant formula to calculate FTEs.  FY 2023 Rule, 87
Fed. Reg. at 49,067, 49,066–72.

89.     For all the DGME payment determinations the Secretary made under his
statutorily invalid formula , the Secretary underpaid the Hospitals (and other hospitals) and thus

retained Medicare funds to which he knew or should reasonably have been expected to know that the agency was not entitled.  This constitutes "similar fault," 42 C.F.R. §§ 405.980, 405.1885(b)(3), requiring the Secretary to reopen all of those invalid payment determinations.

90.     The Hospitals lack any adequate remedy available other than an order from this Court directing the Secretary to reopen and revise all of the Hospitals' previously final DGME payment determinations made using the statutorily invalid method.  The Hospitals appealed to the Board the Secretary's determination in the FY 2023 Rule not to reopen closed cost reports to correct his erroneous DGME payments, and the Board dismissed the Hospitals' appeals on May 14, 2024, constituting final agency action.  The Hospitals have, therefore, exhausted administrative remedies before seeking mandamus relief.  *Monmouth*, 257 F.3d at 813.

## COUNT III:
## Failure to Act Under § 706(1) of the APA

91.     Under 5 U.S.C. § 706(1), the "reviewing court shall … compel agency action unlawfully withheld or unreasonably delayed."  Agency action is "unlawfully withheld" where the law makes "a specific, unequivocal command," and the requirement is for a "precise, definite act about which an official had no discretion whatever."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (cleaned up).

92.     Under § 1395ww(h)(4)(C), the Secretary is compelled to apply certain weighting factors.  Yet despite promulgation of the retroactive statutorily compliant regulation in place of his statutorily invalid rule, the Secretary refuses to apply the statutory weighting factors to the Hospitals' past payment determinations.

*****

**REQUEST FOR RELIEF**

WHEREFORE, the Hospitals respectfully request that this Court enter an order:

1.      Directing the Secretary to reopen the Hospitals' closed cost reports covering the time periods referenced in the Hospitals' complaint;

2.      Requiring the Secretary to recalculate the Hospitals' DGME payments consistent with the Medicare statute and under the method set forth in the FY 2023 Rule and revised regulation;

3.      Requiring the Secretary to pay the Hospitals interest on the payments resulting from the Court's orders, pursuant to 42 U.S.C. § 1395oo(f)(2) and/or 42 U.S.C. § 1395g(d); and

4.      Awarding the Hospitals their costs and fees incurred in this litigation and granting such other relief in law and/or equity as this Court may deem just and proper.

Respectfully submitted,

Dated: July 12, 2024

/s/ Kelly A. Carroll
Kelly A. Carroll (D.C. Bar No. 1018485)
David J. Vernon (D.C. Bar No. 1030537)
HOOPER, LUNDY & BOOKMAN, P.C.
401 9th Street, NW, Suite 550
Washington, D.C. 20004
(202) 580-7700
E-Mail: kcarroll@hooperlundy.com
E-Mail: dvernon@hooperlundy.com

Sven Collins (D.C. Bar No. C00093)
HOOPER LUNDY & BOOKMAN, P.C.
999 18th Street, Suite 3000
Denver, CO 80202
(720) 687 2850
E-mail: scollins@hooperlundy.com

*Attorneys for Plaintiffs*